PEOPLE ex rel. GOLDSCHMIDT v. TRAVIS, State Comptroller.

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

STATES ⬥52—CIVIL SERVICE EMPLOYÉS—REMOVAL.
    Where an examiner of municipal accounts in the office of the comp- troller, while on leave of absence without pay and engaged in the work of the bureau of efficiency and economy, gave the newspapers a copy of a portion of a report made by him to the state comptroller, which por- tion had been eliminated from the report after it had reached the comp- troller's office, if the comptroller believed that such activities of a sub- ordinate investigator were not calculated to promote the orderly admin- istration of the law, his discharge of such employé after giving him an opportunity to explain was not a violation of Civil Service Law (Consol. Laws, c. 7) § 25, providing that no recommendation or question under the authority of that law shall relate to political opinions or affiliations of any person, that no appointment or selection to or removal from office or employment shall be affected or influenced by such opinions or affilia- tions, that no person in the civil service is under any obligation to con- tribute to any political fund ·or to render any political service, and no person shall be removed for refusing so to do, though the matter given to the press related to alleged irregularities in the municipal affairs of a city, as the section in question does not prevent the removal of any person whose conduct has some possible relation to the political admin- istration, but only prevents a removal because of the political affiliations of the person removed.
    [Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 57; Dec. Dig. ⬥52.]

Appeal from Special Term, Albany County.

Mandamus by the People, on the relation of Hermann E. Gold- schmidt, against Eugene M. Travis, State Comptroller.  From an order denying his motion for a writ of mandamus, the relator appeals.  Af- firmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Hermann E. Goldschmidt, of New York City (William W. Gerber, of Syracuse, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen. (Edward G. Griffin, Deputy Atty. Gen., of counsel), for respondent.

WOODWARD, J.  This proceeding was brought on by an order to show cause, granted upon the relator's petition, seeking a writ of man- damus to the comptroller of the state, directing him to restore the re- lator to the position of examiner of municipal accounts.  The motion was denied, and the relator now suggests that he is entitled to an alter- native writ, in order that he may try out the questions of fact put in issue by the respondent's affidavits.  This is based on the proposition

that his motion was for a writ of mandamus, and that at the close of his oral argument he asked for an alternative writ, and it is doubtless good practice, in a proper case, for an alternative writ to issue.

The relator was appointed an examiner of municipal accounts by the comptroller in March, 1911. This is a position created by section 34 of the General Municipal Law (Consol. Laws, c. 24), and belongs to the competitive class under the provisions of the Civil Service Law. The relator is not a veteran or exempt fireman, and comes within that provision of law that:

No "person holding a position in the classified state civil service, subject to competitive examination, shall be removed until he has been allowed an opportunity of making an explanation." Civil Service Law, § 22.

It does not appear to have been suggested in the moving papers that there had been any disregard of this provision of law. Indeed, it appears that the relator had, at his own request, been given a leave of absence without pay, that he might engage in the work of the bureau of efficiency and economy, that while so engaged he was dismissed from the position of examiner of municipal accounts, because of the fact that he had supplied to the newspapers copy of a portion of a report made by him to the state comptroller, but which portion had been eliminated from the report after it had reached the comptroller's office. This reason for his discharge appears to have been called to his attention, and there is no claim that he was not permitted to make all the explanation he desired to make.

The relator's contention here is that the removal (or the refusal of the comptroller to reinstate him at the end of the leave of absence) was in violation of the provisions of section 25 of the Civil Service Law, because as he claims, the removal was due to political considerations. His theory seems to be that because the matter which he gave to the press related to some alleged irregularities in the conduct of the municipal affairs of the city of Syracuse, that the cause of his removal was necessarily because of political considerations. The provisions of section 25 of the Civil Service Law are that no "recommendation or question under the authority of this chapter shall relate to the political opinions or affiliations of any person whatever; and no appointment or selection to or removal from an office or employment within the scope of the rules established as aforesaid, shall be in any manner affected or influenced by such opinions or affiliations," and if the provisions ended here, it might, with some degree of plausibility perhaps, be urged that any removal growing out of any political matter whatever, was within the letter of the statute; but the remainder of the section clearly indicates, what would naturally be inferred from the foregoing, that it was intended merely as a limitation upon partisan action. The section continues:

"No person in the civil service of the state, or of any civil division or city thereof, is for that reason under any obligation to contribute to any political fund or to render any political service, and no person shall be removed or otherwise prejudiced for refusing so to do. No person in the said civil service shall discharge or promote or reduce, or in any manner change the official rank or compensation of any other person in said service, or promise or threaten so to do for giving or withholding or neglecting to make any con-

tribution of money or service or any other valuable thing for any political purpose. No person in said service shall use his official authority or influence to coerce the political action of any person or body, or to interfere with any election."

Obviously the Legislature never intended that one holding a civil service position should be under no obligation to "render any political service" in the most comprehensive use of the word "political." It merely intended to separate the civil service of the state from the political obligations of the individual. It was the antithesis of the doctrine that "to the victors belong the spoils" and declared that a man holding a civil service position could not be disturbed in his tenure of office because he was a Republican, a Democrat, a Prohibitionist, or an affiliated member of any political organization. To contend that the statute intended to keep in office every man who had passed a civil service examination, no matter how detrimental he might be to the orderly administration of the affairs of the state, if his conduct had some possible relation to the political administration, is absurd, and if all that the relator contends is true, and if the publication of his alleged report was justified by the highest considerations of public policy, it does not operate to give him rights in this proceeding. Citizens, generally, in discussing public affairs have to accept the responsibility for their conduct, and if the comptroller thought that the activities of a mere subordinate investigator were not calculated to promote the orderly administration of the law, he had a perfect right to discharge the relator, upon giving him an opportunity to explain, provided the removal was not based upon the fact that the relator was a Democrat or a Republican, or whatever may have been his affiliations. In the present instance it was the relator's conduct in giving out a report which was not recognized by the department, and not the relator's political affiliations, which was given as the foundation of the comptroller's action, and there is no claim whatever that the relator was removed for any other cause than that stated; it is merely claimed that this action was political, and therefore that the relator could not be removed for performing a political action. The reasoning is unsound.

The order denying the motion for a writ of mandamus should be affirmed, with costs. All concur.